## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>BRYAN MATTHEWS ET AL.,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td>Civil No. 25-1305-BAH</td></tr>
<tr><td>BLOOMWORKS WELLNESS, LLC, ET AL.,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Bryan Matthews ("Matthews"), on behalf of himself and all others similarly situated, along with ten individuals who have filed consent to join forms with the Court[1] (collectively "Plaintiffs") brought suit against Defendants Bloomworks Wellness, LLC ("Bloomworks") and Jennifer Miller ("Miller") (collectively "Defendants") alleging violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and also raising an unjust enrichment claim under Maryland common law related to Defendants' alleged tip pooling practices. ECF 1. Pending before the Court are Defendants' motion to dismiss, ECF 31, and Matthews' motion for conditional certification and court-authorized notice, ECF 33. Plaintiff filed an opposition to the motion to dismiss, ECF 36, to which Defendants replied, ECF 40.[2] Defendants

---

[1] These individuals include Jacob Abuhamada, Melissa Cutts, Sara Fitzgerald, Matthew Sharpe, Michael Stewart, Meghan Tierney, Alexander Peyton Ford, Sarah Schellhardt, Danilo Jongezoon, and Cody Smith. *See* ECF 11; ECF 12; ECF 22; ECF 23; ECF 30.

[2] Defendants also filed a motion for leave to file a supplemental memorandum in support of their motion to dismiss, ECF 45, which Plaintiffs opposed, ECF 46. The Court will grant Defendants' motion for leave.

filed an opposition to the motion for certification, ECF 37, to which Matthews replied, ECF 41.[3] All filings include memoranda of law, and the motion for certification and the opposition thereto contain exhibits.[4]   The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).   Accordingly, for the reasons stated below, Defendants' motion to dismiss is **DENIED** and Plaintiff's motion for conditional certification and court-authorized notice is **GRANTED** in part.

## I.    BACKGROUND

Matthews alleges that he has been "employed by Defendants in the position of Budtender at Defendants' SweetBuds Dispensary in Frederick," Maryland since June of 2023.  ECF 1, at 2 ¶ 4, at 4 ¶ 15.  Bloomworks does business in Maryland under the registered trade name "Sweetbuds Dispensary," and Miller is the owner and operator of Bloomworks.  *Id.* ¶¶ 6–7.  "SweetBuds Dispensary sells a variety of cannabis products for recreational and medical purposes," which Maryland legalized in 2023.  *Id.* at 3 ¶ 10; *Jensen v. Md. Cannabis Admin.*, 151 F.4th 169, 172 (4th Cir. 2025) ("In 2022, Maryland citizens voted to amend the Maryland Constitution to legalize adult-use recreational marijuana.").   In addition to Miller, the classification of employees at Sweetbuds Dispensary include (1) "budtenders" (or "dispensary agents"), (2) "front door greeters," (3) receptionists, (4) managers, and (5) a single director of operations or "head manager."  ECF 1, at 3 ¶ 12 (capitalization altered).   "Each shift typically has 8 Budtenders in addition to one front door greeter and two receptionists. There are approximately 6 managers, with 3 working per shift." *Id.*

---

[3] Matthews also filed an unopposed motion for leave to file a notice of supplemental authority, ECF 44, which will be granted.

[4] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

"Budtenders work on the sales floor and at the cash register, directly assisting customers in the selection and purchasing of cannabis products." *Id.* ¶ 13.  According to Matthews, managers spend the majority of their shift in the back office, away from the sales floor, and are responsible for supervis[ing] the budtenders, "handl[ing] customer complaints, account[ing] for all the money in the registers, manag[ing] access to the vault where money and products are kept, and open[ing] and clos[ing] the store." *Id.* ¶ 14.

"Managers are also responsible for collecting and pooling the cash tips from the tip jars at the registers throughout the shift." *Id.*  Matthews contends that "[i]t is common in the industry for cannabis dispensary customers to leave tips, and customers at SweetBuds Dispensary have left, and do leave, tips for Budtenders consistent with industry custom." *Id.* at 4 ¶ 17.  At SweetBuds Dispensary, "[e]ach cash register has a tip jar in front of it where customers can leave cash tips in the jars." *Id.* ¶ 18.  "Throughout the day, Managers will empty the tip jars into a large bucket, pooling all cash tips into one pot." *Id.*  "Defendants use a mandatory tip pool system to distribute tips. Tips distributed from the tip pool are paid out to employees on a biweekly basis," which corresponds with employees' regular pay days. *Id.* ¶ 19.  Tips are paid out to both budtenders and managers "in cash, typically in amounts reflecting a multiple of 5, and do not appear on the employees' pay stubs." *Id.*

In Matthews' position as budtender, he is paid "an hourly rate of $16.75 per hour" and "also customarily and regularly earns more than $30 per month in tips." *Id.* at 4 ¶ 16.  Matthews contends that he has "witnessed Managers being distributed tips from the tip pool" and discussing "their use of tips in front of Budtenders." *Id.* ¶ 21.  He also alleges that Defendants' "Policy Book" authorizes the revocation of tips "from employees who 'excessively call[] out' regardless of the hours that they actually work." *Id.* ¶ 22 (alteration in original).  The Policy Book apparently

"likewise states that employees 'will not receive [their] tips'—regardless of the hours actually worked—if they do not give two weeks' notice prior to terminating their employment" and "prohibits employees from 'touch[ing] tips.'" *Id.* at 4–5 ¶¶ 22–23.

Matthews alleges that "[o]n at least two occasions during the relevant time period, Defendant[s have] taken between $50-$100 in tips from the mandatory tip pool to pay for products which have been damaged or broken." *Id.* at 5 ¶ 24 (alteration added). Defendants allegedly did not provide "any information about the tip pool or how the distributions from the tip pool would be calculated" and "when employees have asked questions of Defendants or complained" about the mandatory tip pool, Defendants "revoked their employee privileges such as ability to take home product samples or purchase merchandise at a discounted rate." *Id.* ¶ 25. The complaint describes "at least one occasion" where a budtender was "reprimanded" by Miller "for speaking about their wages on the sales floor and was threatened with further discipline if they continued to speak openly about Defendants' pay practices." *Id.* ¶ 26.

On April 22, 2025, Matthews filed a class action complaint in this Court against Defendants. *See generally* ECF 1. Count One asserts a violation of § 203(m)(2)(B) of the FLSA, which provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B); ECF 1, at 7 ¶ 41. Matthews asserts that Defendants violated this provision by including managers in the mandatory tip pool and by withholding tips from the tip pool to account for damaged or broken products or noncompliance with the Policy Book. ECF 1, at 7 ¶ 41. Count Two asserts a claim for unjust enrichment under Maryland common law, alleging that "Defendants were unjustly enriched by their unlawful refusal to pay Plaintiff and the Class all tips owed and have benefited at their

expense." *Id.* at 9 ¶ 51. Plaintiffs seek damages equal to any unpaid compensation, a declaratory judgment that Defendants unlawfully withheld wages, and reasonable attorneys' fees and costs. *Id.* at 9.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.   ANALYSIS

### A.    Motion to Dismiss

#### 1.    Illegality Defense

Defendants' primary argument in favor of dismissal is that "Plaintiffs seek to pursue claims which federal law identifies as criminal." ECF 31-1, at 1. Specifically, Defendants argue that Plaintiffs have no remedy in federal court where the parties are engaging in cannabis distribution violative of federal law. *Id.* "The Court's acknowledgement of jurisdiction of this case," Defendants contend, "would hold that the FLSA applies to businesses which are engaging in federally criminal conduct." *Id.* at 9. Matthews argues that "Defendants' argument rests on the erroneous assertion that the Controlled Substances Act ('CSA') prohibits the Court from enforcing the FLSA against Defendants." ECF 36-1, at 8. Matthews instead asserts that an award of damages in a civil case involving cannabis-related transactions does not require any violation of federal law. *Id.* (citing *One Triple Two, LLC v. Divel*, Civ. No. 22-2027-BAH, 2024 WL 2155058, at *5 (D. Md. May 13, 2024)).

As an initial matter, the Court observes that although Defendants characterize their FLSA argument as a challenge to this Court's subject matter jurisdiction, they really challenge the

sufficiency of Plaintiffs' FLSA claims. *See Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1189 (D. Colo. 2018) (collecting cases) ("Defendant reasons that because Plaintiff is employed in the marijuana industry, an industry 'entirely forbidden' by the Federal Controlled Substances Act (the 'CSA'), 21 U.S.C. § 812, Plaintiff does not enjoy the protections of the FLSA, and thus, the Court does not have subject matter jurisdiction over Plaintiff's claim. . . . Defendant's argument actually goes to the sufficiency of Plaintiff's claim."), *aff'd,* 939 F.3d 1106 (10th Cir. 2019); *Greenwood v. Green Leaf Lab LLC*, No. 3:17-CV-00415–PK, 2017 WL 3391671, at *1 (D. Or. July 13, 2017) ("Defendant contends that it is not subject to the FLSA because its business is illegal under federal law. Because Defendant challenges the legal sufficiency of Plaintiff's FLSA claims rather than this court's subject matter jurisdiction, I conclude that Defendant's motion should be treated as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."), *report and recommendation adopted*, No. 3:17-CV-00415-PK, 2017 WL 3391647 (D. Or. Aug. 7, 2017).

"The purpose of the FLSA is 'to protect all covered workers from substandard wages and oppressive working hours.'" *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 304 (4th Cir. 2004). To achieve that end, the FLSA's protections generally apply (with a few exceptions) to "any individual employed by an employer," which is itself defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e). The FLSA further defines "employ" as "to suffer or permit to work." *Id.* § 203(g). The FLSA does exempt some classes of workers from its statutory protections based on the industry in which they work. *See, e.g.*, 29 U.S.C. § 213(d) (exempting "employers engaged in the delivery of newspapers to the consumer or to any homeworker engaged in the making of wreaths composed principally of natural holly, pine, cedar, or other evergreens"); *id.* § 203(i), (j) (limiting the application of the FLSA to employees engaged in "cotton ginning" and the

"processing of sugar beets, sugar beet molasses, or sugar cane).  But the FLSA's exemptions are narrow, and the Fourth Circuit has made clear that the FLSA should be construed "liberally to apply to the furthest reaches consistent with congressional direction."  *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 366 (4th Cir. 2000) (quoting *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 296 (1985)); *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) ("[B]ecause the Act is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." (alteration in *Schultz*) (quoting *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir.1999))).

Moreover, "case law is clear that employers are not excused from complying with federal laws, such as the FLSA, just because their business practices may violate federal law."  *Kenney*, 284 F. Supp. 3d at 1190 (first citing *United States v. Sullivan*, 274 U.S. 259, 263 (1927); and then citing *Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1485 (10th Cir. 1985)).  Indeed, federal district courts have considered and rejected Defendants' contention in the context of FLSA suits arising out of marijuana-related businesses.  *See, e.g.*, *Kenney*, 284 F. Supp. 3d at 1189–90; *Greenwood*, 2017 WL 3391671, at *3.  For example, in *Greenwood v. Green Leaf Lab LLC*, a United States Magistrate Judge of the District of Oregon considered whether a plaintiff who was a courier for a marijuana-testing laboratory could maintain an FLSA action in federal court.  2017 WL 3391671, at *1.  The court there concluded that "any possible violations of the Controlled Substances Act are not relevant to whether the FLSA's protections apply to Plaintiff," reasoning in part that "just because an employer 'is violating one federal law, does not give it licence to violate another.'"  *Id.* at *3 (quoting Advice Mem. from Bany J. Keamey, Assoc. Gen. Counsel, Div. of Advice, on Ne. Patients Grp. d/b/a Wellness Connection of Me., Cases 01–CA–104979; 01–CA–106405, to Jonathan B. Kreisberg, NLRB Reg'l Dir. at 1 (Oct. 25, 2013)).  The court also

concluded that "[t]here is no inherent conflict between the FLSA's requirements and the Controlled Substances Act's prohibition of marijuana." *Id.*

The District of Colorado reached the same conclusion, which the Tenth Circuit affirmed. *See Kenney*, 284 F. Supp. 3d at 1189–90. As the Tenth Circuit observed, "[p]ersuasive case law endorses the concept that the FLSA is focused on regulating the activity of businesses, in part on behalf of the individual workers' wellbeing, rather than regulating the legality of individual workers' activities." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1112 (10th Cir. 2019); *see also Williams v. Bigtop Bingo, Inc.*, No. 3:20CV2377-TKW-HTC, 2021 WL 11680429, at *9 (N.D. Fla. June 7, 2021) ("[T]here is strong persuasive authority for the proposition that an employer is not relieved of its obligation to pay its employees in compliance with FLSA simply because the employer is engaged in an illegal business."); *see also Beck v. Curaleaf, Inc.*, Civ. No. SAG-25-00741, 2025 WL 2344961, at *2 (D. Md. Aug. 13, 2025) (although the illegality question did not appear to be raised, allowing an FLSA collective action to proceed against a Maryland dispensary). Federal courts have thus allowed FLSA claims to proceed against employers engaged in other illegal activities. *See, e.g.*, *Bustamente v. Uno Cafe & Billiards Inc.*, No. 1:15-CV-04192-FB-RML, 2018 WL 2349507, at *4 n.6 (E.D.N.Y. May 23, 2018) (illegal gambling operation); *Williams v. Bigtop Bingo, Inc.*, No. 3:20CV2377-TKW-HTC, 2021 WL 11680429, at *8–9 (N.D. Fla. June 7, 2021) (arguably illegal bingo operation). Accordingly, the Court likewise concludes that individuals employed in the marijuana industry "are not categorically excluded from FLSA protections," *Kenney*, 939 F.3d at 1113, and Plaintiffs' FLSA claim is not barred because of the industry in which they work.

Defendants invoke case law in which federal district courts have refused to "issue orders that facilitate illegal activity, namely violations of the CSA." *AgriAuto Genetics LLC v. Harris*,

No. 22-CV-273-DES, 2023 WL 8371940, at *2 (E.D. Okla. Dec. 4, 2023); *e.g.*, ECF 31-1, at 9. However, Plaintiffs here do not seek injunctive relief related to continuing the business of or their employment at SweetBuds Dispensary, and relief related to any compensation due under the FLSA "does not require any violation of federal law; it merely requires payment from one party to another." *One Triple Two, LLC*, 2024 WL 2155058, at *5; ECF 1, at 9 (prayer for relief). Moreover, as the Tenth Circuit observed and unlike other cases Defendants cite, this case involves the enforcement of a federal law. To reach Defendants' position, the Court would effectively have to "interpret the CSA as implicitly repealing the FLSA's [mandates] for employers in the marijuana industry," and the United States Supreme Court has emphasized that "an implied repeal argument 'faces a stout uphill climb.'" *Kenney*, 939 F.3d at 1110 (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)). Like the Tenth Circuit, this Court concludes that recognizing Matthews and others as "covered by the FLSA is in line with both the plain reading and the overall purposes of that statute, and doing so does not require disavowal of the CSA." *Id.* at 1110–11.

2.    <u>Unclean Hands</u>

Defendants also argue that the affirmative defense of "unclean hands" provides a separate basis for dismissal of the complaint. ECF 31-1, at 10–13. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond, F. & P. R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). However, Defendants "have not identified a single case suggesting that, even if true," work in the marijuana industry "would constitute a defense to a violation of the FLSA" on the basis of the unclean hands doctrine. *Cf. Zepeda v. Rivera Maint. Landscaping, LLC*, No. 24-CV-1952-ABA, 2025 WL 401941, at *4 (D. Md. Feb. 5, 2025) (holding that Defendants'

invocation of the unclean hands doctrine in an FLSA case based on the claim that employees presented fraudulent immigration documentation or had an "illegal" immigration status was an "attempt to end-run the well-settled irrelevance of immigration status in FLSA cases").

Moreover, to the extent that Defendants advocate for dismissal of Matthew's unjust enrichment claim brought under Maryland common law, *see* ECF 31-1, at 12–13, it bears repeating that Maryland has legalized the marijuana industry. *See Jensen*, 151 F.4th at 172. It is true that the intermediate appellate court of Maryland has before affirmed the applicability of the unclean hands doctrine to a plaintiff's claim for unjust enrichment where the claim was inconsistent with his prior actions. *See Mona v. Mona Elec. Grp., Inc.*, 934 A.2d 450, 473–76 (Md. App. 2007). But such precedent offers no basis for finding that "the court would be assisting or condoning inequitable and perhaps unlawful conduct by" permitting Plaintiffs to seek tips and any other compensation arising from an employment relationship that Maryland law has expressly endorsed as legal. *See id.* at 478. Accordingly, the Court does not find that "the face of the complaint clearly reveals the existence of" the unclean hands doctrine as "a meritorious affirmative defense." *See Brooks*, 85 F.3d at 181. Dismissal of the complaint is not warranted.

### B.    Motion for Conditional Certification and Court-Authorized Notice

Having decided that Matthews' complaint should not be dismissed, the Court next turns to his motion for conditional certification. *See* ECF 33. The FLSA permits an employee to bring an action for unpaid wages on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* That provision "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (citing

*Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)); *see also Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 137 n.1 (4th Cir. 2018) ("A collective action under the [FLSA] differs from a class action under Federal Rule of Civil Procedure 23 because potential plaintiffs can join an FLSA collective action only by affirmatively giving consent in writing to become a party.").  However, "[t]o effectuate the remedial purposes of the Act, it is well settled that district courts have discretion, in appropriate cases, to allow such claims to proceed as a collective action and to facilitate notice to potential plaintiffs." *Quinteros*, 532 F. Supp. 2d at 771 (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Court has received "additional consent forms for Opt-In Plaintiffs who" Matthews reports "heard about the lawsuit through word of mouth," and the "total number of Plaintiffs in this case now sits at eleven." *See* ECFs 1, 11, 12, 22, 23, and 30.  Matthews now requests that "the Court authorize notice to be sent to all persons who are or were employed as Budtenders, Front Door Greeters, and/or Receptionists at SweetBuds Dispensary in Frederick, Maryland, within three years of the date the Court approves notice in this matter." ECF 33-1, at 6–7.

"Courts employ 'a two-step process to test the sufficiency of the purported class: (1) a pre-discovery determination that the purported class is similarly situated enough to disseminate a notice . . . ; and (2) a post-discovery determination, typically in response to a motion for decertification, that the purported class is indeed similarly situated.'" *Lucero v. Horizon Land Mgmt., LLC*, Civ. No. JKB-25-0903, 2025 WL 3481782, at *2 (D. Md. Dec. 4, 2025) (quoting *Jackson v. Am. Elec. Warfare Assocs., Inc.*, Civ. No. TDC-22-1456, 2023 WL 5154518, at *2 (D. Md. Aug. 10, 2023)).  "The pre-discovery determination is a 'modest inquiry' in which the Court merely 'makes a threshold determination whether the class is similarly situated.'" *Id.* (quoting *Mazariegos v. Pan 4 Am., LLC*, Civ. No. DLB-20-2275, 2021 WL 5015751, at *3 (D. Md. Oct.

28, 2021)). "Indeed, courts in this district have long emphasized the *modest* showing required for plaintiffs to obtain conditional certification." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566–67 (D. Md. 2012) (emphasis added) (collecting cases). It is "important that the inquiry occur under a lenient standard to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer." *Lancaster v. FQSR*, Civ. No. TDC-19-2632, 2020 WL 5500227, at *3 (D. Md. Sept. 11, 2020).

To show that plaintiffs are "similarly situated," they "must present 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Lucero*, 2025 WL 3481782, at *2 (quoting *Alderoty v. Maxim Healthcare Servs., Inc.*, Civ. No. TDC-14-2549, 2015 WL 5675527, at *5 (D. Md. Sept. 23, 2015)); *see also Ware v. AUS, Inc.*, Civ. No. RDB-16-3909, 2017 WL 1354143, at *2 (D. Md. Apr. 13, 2017) ("This Court has held that a group of FLSA plaintiffs is similarly situated if they can show they were victims of a common policy, scheme, or plan that violated the law."). Mere allegations in the complaint generally do not suffice, but plaintiffs can rely on "affidavits or other means" and "need not include evidence that the company has a formal policy." *Lucero*, 2025 WL 3481782, at *2 (quoting *Butler*, 876 F. Supp. 2d at 567); *see also Quinteros*, 532 F. Supp. 2d at 771 (quoting *Camper*, 200 F.R.D. at 519). At this stage of the inquiry, the Court does not "weigh the merits, resolve factual disputes, or make credibility determinations." *Lucero*, 2025 WL 3481782, at *2 (quoting *Essame v. SSC Laurel Operating Co.*, 847 F. Supp. 2d 821, 825 (D. Md. 2012)).

1.     <u>Conditional Certification</u>

The complaint alleges that as a result of Defendants' practices regarding tip pooling—in particular, allowing tips to be shared with managers, using the mandatory tip pool to pay for certain business expenses, and withholding tips from employees as a form of punishment—Plaintiffs and

similarly situated employees were not properly compensated under the FLSA. *See* ECF 1, at 7–8. The three declarations attached to the motion for conditional certification reflect that these practices were observed or known of by multiple budtenders. *See* ECF 33-3 (declaration of Bryan Matthews), at 3 ¶¶ 8–10, at 4–5 ¶¶ 19–20; ECF 33-4 (declaration of Jacob Abuhamada), at 3 ¶ 8, at 4 ¶¶ 15–16; ECF 33-5 (declaration of Sara Fitzgerald), at 3 ¶¶ 8–9, at 4 ¶¶ 18–19. Moreover, Matthews asserts that Defendants' storefront in Federick, Maryland is its "only retail location" and so the tip pooling policies are likely to have been "experienced by all Budtenders, Front Door Greeters, and Receptionists." ECF 33-1, at 10. Because the affidavits provided, in addition to the allegations in the complaint, offer substantial allegations "that the putative class members were together the victims of a single decision, policy, or plan" related to Defendants' tipping practices, *Lucero*, 2025 WL 3481782, at *2 (citation omitted), the Court will exercise its discretion to conditionally certify the collective action here.

Defendants oppose the motion for conditional certification and notice in its entirety. *See* ECF 37-1. First, Defendants argue that courts have "not embraced entertaining such Motions before any discovery." *Id.* at 14. Yet, Defendants cite a case that stands for the opposite proposition: "Because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action, *see* 29 U.S.C. § 256(b), courts have concluded that the objectives to be served through a collective action *justify the conditional certification of a class* of putative plaintiffs early in a proceeding, *typically before any significant discovery*, upon an initial showing that the members of the class are similarly situated." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008); *see also Castillo v. P & R Enters., Inc.*, 517 F. Supp. 2d 440, 444 (D.D.C. 2007) ("[A] court may certify a conditional class of putative plaintiffs *prior to discovery* upon an initial showing that the members of the class are similarly situated." (emphasis

added)).  And in fact, it appears that the opposite of Defendants' argument is true as caselaw suggests that "while late-filed conditional certification motions are not unheard of, they are heavily disfavored."  *Rivera v. Jet Auto. Servs., LLC*, Civ. No. JKB-20-1037, 2021 WL 3056224, at *2 (D. Md. July 20, 2021) (collecting cases where judges denied or disfavored conditional certification motions filed near the end of discovery).

Defendants next argue that Matthews "has failed to make a sufficient showing that a common illegal policy even exists."  ECF 37-1, at 13.  On this point, Defendants spill much ink on the topic of whether the managers at SweetBuds Dispensary meet the test set out in the FLSA's implementing regulations for "managers" potentially ineligible to receive tips.  *See* ECF 37-1, at 3–4.  Defendants argue that Matthews "assumes that [ ] using the title 'manager' and claiming such individuals are sharing in the tip pools is sufficient to show a violation."  *Id.* at 13.  Instead, Defendants contend that "managers are also receiving the tips for the manager's direct service of the customers," which Defendants argue may make their receipt of tips lawful under the FLSA and its implementing regulations.  *See id.* at 5–10.

However, these arguments relate to the merits of the underlying FLSA claim.  Defendants cite *Walker v. Civility Mgmt. Sols., LLC* for the proposition that '[a] court is required to 'look beyond the employee's job title and consider the employee's salary and duties to determine whether an FLSA exemption applies.'"  ECF 37-1, at 13–14 (citing Civ. No. GLS-21-2100, 2024 WL 4170015, at *9 (D. Md. Sept. 12, 2024)).  However, *Walker* was not a decision on the issue of conditional certification, but rather a decision resolving motions for summary judgment.  *See* 2024 WL 4170015, at *1, *5.  To the contrary, at the pre-notice certification stage, the Court does not "weigh the merits, resolve factual disputes, or make credibility determinations."  *Lucero*, 2025 WL 3481782, at *2 (quoting *Essame*, 847 F. Supp. 2d at 825); *see also Cummins v. Ascellon Corp.*,

Civ. No. DKC-19-2953, 2020 WL 6544822, at *6 (D. Md. Nov. 6, 2020) ("[T]his argument goes to the merits of whether these Surveyors were exempt under the FLSA. Weighing into the merits of the FLSA's requirements in this way is inappropriate at the conditional certification stage."); *Johnson v. Helion Techs., Inc.*, Civ. No. DKC-18-3276, 2019 WL 4447502, at *6 (D. Md. Sept. 17, 2019) (noting that defendant's arguments "delve[d] too deeply into the merits of the dispute" and that "such a steep plunge is inappropriate for such an early stage of a FLSA collective action" (alteration added) (quoting *Essame*, 847 F. Supp. 2d at 826)). And as this Court has before held, "whether an [FLSA] exemption applies requires a fact-intensive analysis" and "[b]ecause discovery is incomplete, the record is too limited for this analysis." *Robinson v. Empire Equity Grp., Inc.*, Civ. No. WDQ-09-1603, 2009 WL 4018560, at *4 (D. Md. Nov. 18, 2009). To be clear, in ruling on the prematurity of such arguments, the Court expresses no view on their merit. The Court concludes only that Defendants' arguments are appropriately advanced at a later stage of litigation,[5] not the conditional certification stage pre-discovery. *Cf id.* ("[I]ndividual class members and their exemptions may be raised by [defendant]'s motion to decertify the class.").

Defendants also argue that Matthews' motion can be rejected because the FLSA claim advanced "would require an individualized application and would not impact or have been applied to all employees who worked as budtenders." ECF 37-1, at 17. Specifically, Defendants observe that "[n]ot all budtenders [necessarily] were impacted by this policy and had tips withheld from

---

[5] The Court observes that Defendants did not advance in its motion to dismiss the merits arguments made in its opposition to certification. *See* ECF 31. The Court will not sua sponte consider them as made in both filings. *See Reynolds v. Goshen Med. Ctr., Inc.*, No. 7:24-CV-1081-M-BM, 2025 WL 2490458, at *12 n.13 (E.D.N.C. July 28, 2025) ("The court will not sua sponte consider grounds for dismissal not raised and argued in defendant's motion to dismiss"), *report and recommendation adopted*, No. 7:24-CV-1081-BO-BM, 2025 WL 2487782 (E.D.N.C. Aug. 28, 2025). Moreover, the question of whether certain classes of employees at SweetBuds Dispensary qualify as "managers" or otherwise under the FLSA and its implementing regulations rests on factual disputes premature to resolve at the motion to dismiss stage.

them," so resolving the claim would require "an individualized approach into the factual predicate giving rise to the tip impact, the specific policy applied, the actual hours worked by the manager[]s in each work week, and any damages." *Id.* In support of their arguments, Defendants cite Judge Bredar's decision in *Rivera*, 2021 WL 3056224. ECF 37-1, at 17–18.

At the outset, the Court observes that *Rivera* presented a different posture than the case at bar. There, plaintiffs "sought a stage one certification at a time when parties are typically disputing a stage two final determination"—after the close of discovery. 2021 WL 3056224, at *2. "Because [p]laintiffs [did] not show[] good cause for their untimely motion," the Court had separate grounds for denial. *Id.* However, Judge Bredar also concluded that "the sparse evidentiary record" made clear plaintiffs could not make a "stage two showing on [that] record." *Id.* The "only evidence" that employees were similarly situated was affidavits from the plaintiffs claiming they worked with 20 similarly situated individuals but, "when pressed at their depositions, [p]laintiffs were able to identify only six such individuals," and defendants submitted affidavits from four of those same persons "affirming that they [had] never been underpaid." *Id.* The Court observed that evidence produced in discovery in *Rivera* suggested other employees were not similarly situated to the plaintiffs "in terms of the manner in which they were paid or (allegedly) underpaid." *Id.* at *3. For example, one of the *Rivera* plaintiffs alleged that the defendants' official pay log was inaccurate, while another argued that "he was routinely required to work additional, unpaid hours to complete administrative tasks." *Id.*

The Court does not find that *Rivera* is analogous to the instant case for two reasons. First, Judge Bredar's analysis rebuffed the plaintiffs' erroneous belief that they could "make the stage two showing on this record." *Id.* at *2. Stage two for certifying an FLSA collective action "generally occurs after discovery is complete" and, because the case is at a "more advanced stage

of the litigation," the court conducts the same "similarly situated" analysis but with "a heightened fact-specific standard." *Roldan v. Bland Landscaping Co., Inc.*, 341 F.R.D. 23, 28 (W.D.N.C. 2022). This case is at stage one, and Plaintiffs are not subject to that heightened standard.[6] Rather, they need only make a "modest showing." *Butler*, 876 F. Supp. 2d at 566. Second, and unlike the affidavits in *Rivera*, the affidavits here—some from opt-in class members—suggest that Plaintiffs complain of a company-wide policy or approach to tip pooling which may violate the FLSA. *See* ECF 33-3, at 3 ¶¶ 8–10, at 4–5 ¶¶ 19–20; ECF 33-4, at 3 ¶ 8, at 4 ¶¶ 15–16; ECF 33-5, at 3 ¶¶ 8–9, at 4 ¶¶ 18–19. That modest showing is all Plaintiffs are required to make at this stage. Arguments related to whether the positions at issue "have similar responsibilities" and whether the differences in those positions "could lead to discrete battles" regarding which plaintiffs have suffered violations of the FLSA, if any, are premature at this stage. *Johnson*, 2019 WL 4447502, at *6; *see also Beck*, 2025 WL 2344961, at *2 (holding that the contention that leads were not management employees in relation to a dispensary's tipping practices was a premature question at the conditional certification stage). Further, the Court does not consider Miller's declaration, ECF 37-2, as capable of defeating Matthews' motion for conditional certification, since "credibility determinations" regarding competing evidence are "usually inappropriate for the question of conditional certification." *Id.* (quoting *Essame*, 847 F. Supp. 2d at 825). The motion for conditional certification will be granted.

2.    Notice

"Once the Court has granted conditional certification of the FLSA collective, it then must approve of the notice by which plaintiffs will inform potential members of the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to

---

[6] Defendants are, of course, free to file a motion for decertification at the end of discovery.

participate." *Tripp v. Perdue Foods, LLC*, No. 1:24-CV-00987-JMC, 2024 WL 4770282, at *8 (D. Md. Nov. 13, 2024). "In FLSA collective actions, district courts have the responsibility to supervise contacts between potential plaintiffs and counsel 'to ensure that employees receive accurate and timely notice so that they can make informed decisions about whether to participate.'" *Lucero*, 2025 WL 3481782, at *4 (quoting *Degidio*, 880 F.3d at 143–44). With that overarching goal in mind, "[c]ourts have 'broad discretion to determine the details of the notice sent to potential opt-in plaintiffs.'" *Id.* (quoting *Alvarez v. Gov't Emps. Ins. Co.*, Civ. No. GLR-24-722, 2024 WL 4679399, at *12 (D. Md. Nov. 5, 2024)). "Nevertheless, this Court 'will not order more extensive notification than is necessary, to reach potential class members[,]' unless special circumstances exist." *Tripp*, 2024 WL 4770282, at *8 (alteration in *Tripp*) (quoting *Blake v. Broadway Services, Inc.*, Civ. No. CCB-18-086, 2018 WL 4374915, at *5 (D. Md. 2018)).

Plaintiffs request that this Court authorize notice to all individuals who meet the following definition:

> All current and former employees of SweetBuds Dispensary in Frederick, MD, who have been employed as a Budtender, Front Door Greeter, and/or Receptionist and who participated in a mandatory tip pool for any workweek since [three years before the date the Court approves notice in this matter.]

ECF 33-1, at 11. In justifying their request to send notice to employees from three years before the date of authorized notice, Matthews notes that the FLSA has a three-year statute of limitations for willful violations and so all non-manager employees within that timeframe could potentially opt into the collective action. *See id.* at 13–14.

Matthews further request a 90-day opt in period, which he contends "is routinely approved by this Court and provides a reasonable time for putative members of the FLSA collective to receive notice and join the lawsuit." *Id.* at 11–12. Regarding the type of notice, Matthews asks "that the Court authorize notice to be sent via U.S. Mail, e-mail, and text message." *Id.* at 12.

Matthews also attaches to the motion a proposed notice, reminder notice, and text notice, which he asserts "will provide putative collective members with an accurate description of the lawsuit and their rights, and will describe who is eligible to join." *Id.* at 11; *see also* ECF 33-6 (proposed notice and consent to join form); ECF 33-7 (proposed reminder); ECF 33-8 (proposed text message notice). Matthews proposes that the reminder notice be sent halfway through the notice period (*i.e.*, 45 days). ECF 33-1, at 13. He further requests that the Court authorize notice "to be posted on a standalone website, through which potential collective members can electronically submit Consent to Join Forms." *Id.*

Finally, Matthews asks the Court to "order Defendants to produce names and contact information for all putative collective members within 14 days of" any order granting the motion at ECF 33 in order to "facilitate effective notice." ECF 33-1, at 14. Matthews contends that the information produced should include at minimum "(1) first and last names; (2) last known mailing address; (3) last known cell phone numbers; (4) last known personal email addresses; (5) dates of employment; (6) location(s) of employment; and, if applicable, (7) employee identification numbers." *Id.*

Defendants advance several counterarguments to Matthews' proposed notice. *See* ECF 37-1, at 23–27. The Court addresses each in turn. First, Defendants argue that Matthews improperly seeks to expand the collective by including receptionists and "front door greeters" as potential recipients of the notice. *Id.* at 23–24. However, for the reasons discussed above, *supra* Section III.B.1, Defendants' arguments turn on factual questions inappropriate for resolution at the conditional certification stage. Plaintiffs have submitted affidavits discussing that despite differing job titles at SweetBuds Dispensary, "front door greeters and receptionists regularly interacted with and assisted customers," along with budtenders. *E.g.*, ECF 33-5, at 2 ¶ 4, at 3 ¶ 12. And as

discussed, "plaintiffs can be similarly situated even though there are distinctions in their job titles, functions, or pay." *Johnson*, 2019 WL 4447502, at *6 (quoting *Robinson v. Empire Equity Group, Inc.*, No. 09-cv-1603-WDQ, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009)). "A 'fact-intensive inquiry' into the distinctions in job responsibilities alleged by Defendant 'is inappropriate at the notice stage, as Plaintiff[s] [are] seeking only conditional certification.'" *Id.* (quoting *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 303 (W.D.N.C. 2013)). For similar reasons, Defendants argument that notice should be limited to employees who regularly receive more than $30 per month in tips, in accordance with the definition of a "tipped employee" under an implementing regulation, fails. ECF 37-1, at 26 (citing 29 C.F.R. § 531.56). These merits-based and related "manageability arguments" as to the proposed collective are premature and thus will not affect the scope of notice authorized by the court. *See Johnson*, 2019 WL 4447502, at *6.

Second, Defendants argue Matthews "is not a good representative for the class" because he has "not alleged injury by most of the policies he claims were illegal including docking tips as a disciplinary action or for failure to provide notice prior to termination" and because he was an "inventory lead" at SweetBuds Dispensary, which Defendants contend is akin to a manager. ECF 37-1, at 24–25. First, as discussed at length above, arguments about Matthews' position at SweetBuds Dispensary and how it maps onto the FLSA's protections "delve[] too deeply into the merits of the dispute" and are thus premature. *Johnson*, 2019 WL 4447502, at *6 (alteration in original) (citation omitted). Matthews has alleged and submitted an affidavit affirming that as a budtender he assisted customers and was subject to Defendants' tip pooling practices, and that is enough at this stage. *See* ECF 1, at 2 ¶ 4, at 3 ¶ 13, at 4 ¶ 21, at 4–5 ¶22, at 5 ¶ 24; *see also* ECF 33-3, at 2–5. Second, Defendants do not cite any case law from this district or elsewhere in which the Court has assessed whether a plaintiff is "a good representative for" an FLSA collective action,

at least at the first stage of certification.  *See* ECF 37-1, at 24–26.  Rather, Defendants cite Rule

23(a)(4) case law on class representatives.  *Id.* at 24 (first citing *Amchem Prod., Inc. v. Windsor*,

521 U.S. 591, 625–26 (1997); and then citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th

Cir. 1996)).    "But these cases are inapposite," primarily "because Rule 23 actions are

fundamentally different from collective actions under the FLSA."  *Genesis Healthcare Corp. v.

Symczyk*, 569 U.S. 66, 74 (2013) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 177–

78 (1989)).  Consequently, Defendants have not persuaded the Court that Matthews is an improper

representative.

Finally, Defendants argue that notice should be limited to two years because it rests on an

"assumption as to proof of willfulness," especially in light of regulations suggesting that there may

not be a blanket prohibition against managers participating in tip pools.  ECF 37-1, at 26–27.

Plaintiffs respond that "courts routinely approve three-year notice periods in FLSA actions where

plaintiffs "allege[] in the Complaint that [the] failure to pay [correctly] was a willful violation."

ECF 41, at 14 (alterations in original) (quoting *Jackson*, 2023 WL 5154518, at *5).  Here, too,

Plaintiffs have the better argument.

"The FLSA statute of limitations is two years, unless the violation is willful, in which case

the limitations period is extended to three years."  *Stacy v. Jennmar Corp. of Virginia, Inc.*, No.

1:21CV00015, 2021 WL 4787278, at *4 (W.D. Va. Oct. 14, 2021) (citing 29 U.S.C. § 255(a)).

Matthews has alleged that Defendants' violations were willful.  *See* ECF 1, at 6 ¶ 30 ("Defendants'

actions in failing to compensate Plaintiff and other similarly situated employees of Defendants in

accordance with the provisions of the FLSA were willful and not in good faith."), at 8 ¶ 46 ("As a

result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld

by Defendants from Plaintiff and similarly situated persons . . . .").  "Because the Court has yet to

make a determination on whether there was a willful violation of the FLSA[,] which would extend the statute of limitations from two to three years, *see* 29 U.S.C. § 255(a) (2012), there is no basis to exclude the third year at this time." *Alderoty*, 2015 WL 5675527, at \*14; *see also Stacy*, 2021 WL 4787278, at \*4 ("Contrary to the defendants' assertion, the plaintiffs have alleged willful violations. While I do not consider the claims' merits at this early stage, I find that the plaintiffs' allegations are sufficient to support authorizing notice for the three-year time period.").  Moreover, the Court agrees with Judge Chuang's observation that "[i]t would be more efficient to issue a broader notice now and limit claims later, than to have to issue a supplemental notice upon any later finding of willfulness." *Alderoty*, 2015 WL 5675527, at \*14.

Having addressed all of Defendants' substantive grievances with the proposed notice, the Court will approve the Notice of Collective Action and Consent to Join Form attached as Exhibit D of the motion for conditional certification and court-authorized notice, as well as the attached Reminder Notice[7] at Exhibit E and the attached Text Message Notice at Exhibit F, to be distributed via U.S. Mail, e-mail,[8] and text message.  *See* ECF 33-6; ECF 33-7; ECF 33-8.  The Court also finds that the request for the Court to order Defendants to produce certain information to Plaintiffs is appropriate.  "[P]roduction of information regarding dates of employment and location is

---

[7] "Reminder notices are 'nothing more than a targeted second contact with those likely to be eligible to join the collective action,'" and this Court frequently permits them in the FLSA context. *McCoy v. Transdev Servs., Inc.*, Civ. No. DKC-19-2137, 2020 WL 2319117, at \*8 (D. Md. May 11, 2020) (quoting *Boyd v. SFS Commc'ns, LLC*, Civ. No. PJM-15-3068, 2017 WL 386539, at \*3 (D. Md. Jan. 27, 2017)); *Sarahong v. Smartlink, LLC*, Civ. No. BPG-22-328, 2022 WL 2065930, at \*3 (D. Md. June 8, 2022) (allowing reminder notices, including by text).

[8] This Court has before acknowledged that "communication through email is [now] the norm" and thus have permitted notice to proceed by email in numerous cases. *McCoy*, 2020 WL 2319117, at \*7 (quoting *Butler*, 876 F.Supp.2d at 575) (alteration in *Butler*); *Sarahong*, 2022 WL 2065930, at \*3 (citing *Arnold v. Acappella, LLC*, Civ. No. BPG-15-3001, 2016 WL 5454541, at \*4 (D. Md. Sept. 29, 2016)).

commonly authorized in FLSA cases, in order to assist with the notification and opt-in process."

*Biscardi v. Gov't Emps. Ins. Co.*, Civ. No. GJH-21-2240, 2023 WL 155238, at *6 (D. Md. Jan. 11, 2023) (collecting cases). However, the Court has not been directed to nor found authority supporting the production of "employee identification numbers," and so will not order Defendants to produce that information.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is denied and Matthews' motion for conditional certification and court-authorized notice is granted in part.

A separate implementing order will issue.


Dated: <u>February 18, 2026</u>                          <u>              /s/              </u>
                                                  Brendan A. Hurson
                                                  United States District Judge